**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| FTX TRADING LTD., *et al.*, | Case No.:  22-11068 (JTD) |
| | (Jointly Administered) |
| Debtors.[1] | |

| | |
|---|---|
| FTX TRADING LTD., ALAMEDA RESEARCH LTD., WEST REALM SHIRES, INC., WEST REALM SHIRES SERVICES, INC., and NORTH DIMENSION, INC., | Adv. Proc. No. 24-50066 (JTD) |
| Plaintiffs, | |
| Against | |
| CENTER FOR APPLIED RATIONALITY, LIGHTCONE INFRASTRUCTURE, INC., LIGHTCONE ROSE GARDEN LLC, and FTX FOUNDATION, | DEMAND FOR TRIAL BY JURY |
| Defendants. | |

**OPENING BRIEF IN SUPPORT OF DEFENDANTS CENTER FOR APPLIED RATIONALITY, LIGHTCONE INFRASTRUCTURE, INC., AND LIGHTCONE ROSE GARDEN LLC'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063, respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the affiliated debtors (collectively, "Debtors") and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

**MCCARTER & ENGLISH LLP**

Kate R. Buck (DE# 5140)
Renaissance Centre
405 N. King Street, Suite 800
Wilmington, Delaware 19801
(T) 302.984.6300
(F) 302.984.6399
kbuck@mccarter.com

*Attorneys for CFAR Defendants*

# TABLE OF CONTENTS

I.      Nature and Stage of the Proceedings ................................................................ 1

II.     Summary of Arguments .................................................................................... 1

III.    Concise Statement of Facts .............................................................................. 4

    A.      The Debtors ......................................................................................... 4

    B.      The CFAR Defendants ......................................................................... 5

    C.      FTX Foundation .................................................................................... 5

    D.      Adversary Action .................................................................................. 6

IV.     ARGUMENT ................................................................................................... 8

    A.      Legal Standard ..................................................................................... 8

    B.      Analysis ............................................................................................... 10

        1.      The Court Should Dismiss The Complaint Because Plaintiffs Failed To Plausibly Plead An Enforceable Interest In The Transfers ................. 10

            a.      The Complaint Does Not Sufficiently Plead an Enforceable Interest in the FTX Trading Transfer .......................................... 12

            b.      The Complaint Does Not Sufficiently Plead An Enforceable  Interest In The Non-Debtor Transfers ...................................... 14

        2.      Counts 1, 2, 3, and 4 Fail to State a Claim for Fraudulent Transfers with Particularity ................................................................................ 17

        3.      Counts 1 and 3 Should Be Dismissed Because Plaintiffs' Actual Fraud Allegations Fail to State a Claim For Relief .......................................... 18

        4.      Counts 2 and 4 Should Be Dismissed Because Plaintiffs' Constructive Fraud Claims Fail to State a Claim for Relief .......................................... 20

            a.      Reasonably Equivalent Value Exists for the Transfers .............. 21

            b.      Insolvency or Indebtedness of the Debtors ............................. 22

        5.      Counts 5 and 7 Should Be Dismissed for Failure to Adequately Allege a Primary Violation ................................................................................ 23

            a.      Count 5 Should be Dismissed .................................................. 23

            b.      COUNT 7 Should be Dismissed. ............................................. 24

6.      Count 6, Asserted Only As To Lightcone Rg, Fails To State A Claim For Unjust Enrichment ................................................................................................................25

V.      CONCLUSION ................................................................................................................26

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alliance Bancorp. v. Select Mortg., L.L.C.*,
No. 274853, 2008 WL 724092 (Mich. Ct. App. Mar. 18, 2008) ............................................11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................................................................................9

*Autobacs Strauss, Inc. v. Autobacs Seven Co., Ltd. (In re Autobacs Strauss, Inc.)*,
473 B.R. 525 (Bankr. D. Del. 2012) .......................................................................................18

*Balaber-Strauss v. Lawrence (In re Churchill Mortg. Inv. Corp.)*,
256 B.R. 664 (Bankr. S.D.N.Y. 2000) ....................................................................................21

*Begier v. I.R.S.*,
496 U.S. 53 (1990) ...................................................................................................................14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)......................................................................................................8, 16, 23

*Beskrone v. OpenGate Capital Group, LLC (In re Pennysaver USA Publishing,
LLC)*, 602 B.R. 256 (Bankr. D. Del. 2019).............................................................................19

*In re Bittrex*,
Case No. 23-10598-BLS, 2024 WL 2347311 (Bankr. D. Del. May 22, 2024) .......................15

*Buck v. Hampton Twp. Sch. Dist.*,
452 F.3d 256 (3d Cir. 2006)....................................................................................................13

*Burtch v. Huston (In re USDigital, Inc.)*,
443 B.R. 22 (Bankr. S.D.N.Y. 2011) ......................................................................................23

*Burtch v. Opus, L.L.C. (In re Opus E., L.L.C.)*,
480 B.R. 561 (Bankr. D. Del. 2012) .........................................................................................9

*City of Farrell v. Sharon Steel Corp.*,
41 F.3d 92 (3d Cir. 1994).........................................................................................................12

*Crown Cork & Seal Tech. Corp. v. Cont'l Pet Tech. Inc.*,
232 F. Supp. 2d 294 (D. Del. 2002)........................................................................................14

*Ellenberg v. Chapel Hill Harvester Church, Inc. (In re Moses)*,
59 B.R. 815 (Bankr. N.D. Ga. 1986) ......................................................................................21

*In re F-Squared Inv. Mgmt, LLC,*
    600 B.R. 294 (Bankr. D, Del. 2019) .......................................................21

*Fineman v. Armstrong World Indus., Inc.,*
    980 F.2d 171 (3d Cir. 1992)...................................................................24

*Flint Ink Corp. v. Calascibetta,*
    Case No. 06-2517-GEB, 2007 WL 2687415 (D. N.J. Sept. 10, 2007)...................11

*Furr v. TD Bank, N.A. (In re Rollaguard Sec., LLC),*
    591 B.R. 895 (Bankr. S.D. Fla. 2018).....................................................20

*Girardi v. Miller (In re Keese),*
    671 F. Supp. 3d 1053 (C.D. Cal. May 1, 2023) .........................................13

*In re HRB Winddown Inc.,*
    2024 WL 1099724 ..............................................................................8

*Jalbert v. Souza (In re F-Squared Inv. Mgmt., LLC),*
    Case No. 15-11469 (LSS), 2019 WL 4261168 (Bankr. D. Del. Sept. 6, 2019)................22, 23

*James Cable, LLC v. Millennium Digital Media Sys., LLC (In re Broadstripe,*
    *LLC)*, 435 B.R. 245 (Bankr. D. Del. 2010)...............................................13

*Kirschner v. Shareholders (In re Trib. Co. Fraudulent Conv. Litig.),*
    10 F.4th 147 (2d Cir. 2021) ................................................................19

*Kitchen v. Boyd (In re Newpower),*
    233 F.3d 922 (6th Cir. 2000) ...............................................................11

*Liquidation Trust v. Uphold HQ Inc. (In re Cred Inc.),*
    650 B.R. 803 (Bankr. D. Del. 2023) .....................................................8, 23

*Lum v. Bank of Am.,*
    361 F.3d 217 (3d Cir. 2004)................................................................13

*Majestic Star Casino, LLC v. Barden Dev., Inc. (In re Majestic Star Casino,*
    *LLC)*, 716 F.3d 736 (3d Cir. 2013) .......................................................23

*Mellon Bank, N.A. v. Metro Commc'ns, Inc. (In re Metro Commc'ns, Inc.),*
    945 F.2d 635 (3d Cir. 1991)................................................................21

*Mellon Bank, N.A. v. Official Comm. of Unsecured Creditors of R.M.L., Inc. (In*
    *re R.M.L., Inc.)*, 92 F.3d 139 (3d Cir. 1996)..........................................22

*In re Missionary Baptist Foundation of Am., Inc.,*
    24 B.R. 973 (Bankr. N.D. Tex. 1982) .....................................................21

*Nemec v. Shrader*,
991 A.2d 1120 (Del. 2010) ...........................................................................25

*Off. Comm. of Unsecured Creditors of Fedders N. Am., Inc. v. Goldman Sachs
Credit Partners L.P. (In re Fedders N. Am., Inc.)*, 405 B.R. 527 (Bankr. D.
Del. 2009) .................................................................................................9, 10

*OHC Liquidation Trust v. Nucor Corp. (In re Oakwood Homes Corp.)*,
325 B.R. 696 (Bankr. D. Del. 2005) ...........................................................10

*Parilla v. IAP Worldwide Servs., VI, Inc.*,
368 F.3d 269 (3d Cir. 2004) .........................................................................16

*Parkell v. Lyons*,
No. 17-1496-LPS, 2019 WL 1435885 (D. Del. Mar. 31, 2019) ....................9

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
998 F.2d 1192 (3d Cir. 1993) .......................................................................13

*Purpura v. JP Morgan Chase*,
No. 16-3765-JMV-LDW, 2018 WL 1837952 (D. N.J. Apr. 18, 2018) ...........9

*Ruddy v. U.S. Postal Serv.*,
455 F. App'x 279 (3d Cir. 2011) ..................................................................13

*Talley v. Christiana Care Health Sys.*,
No. 17-926-CJB, 2018 WL 4938566 (D. Del. Oct. 11, 2018) ......................16

*In re United Tax Grp.*,
Case No. 14-10486 (LSS), 2018 WL 1135496 (Bankr. D. Del. Feb. 28, 2018) ...............10, 22

*Vital Distributions, LLC v. Pepperidge Farm, Inc.*,
No. 2:22-cv-319-MCE-KJN, 2024 WL 1484198 (E.D. Cal. Apr. 6, 2024) ...........14

*W. Oil & Gas JV, Inc. v. Castlerock Oil Co.*,
91 Fed. Appx. 901 (5th Cir. 2003) ...............................................................11

*In re Zohar III, Corp.*,
639 B.R. 73 (Bankr. D. Del. 2022) ...............................................................24

**Statutes**

6 *Del. C.* § 1304 ...........................................................................18, 19, 20, 21

11 U.S.C. § 502 .........................................................................................4, 17

11 U.S.C. § 541 .......................................................................................12, 14

11 U.S.C. § 544 .......................................................................................10, 23

11 U.S.C. § 548 ................................................................................................ *passim*

11 U.S.C. § 550 ................................................................................................ 17, 23

**Other Authorities**

Fed. R. Civ. P. 9 ................................................................................................ 9, 10

Fed. R. Civ. P. 12 .............................................................................................. 8, 16

5 COLLIER ON BANKR. § 548.03 (16th ed. 2023) ......................................... 12

## I.     NATURE AND STAGE OF THE PROCEEDINGS

The Complaint seeks to *avoid* nearly $5 million in Transfers allegedly made to all Defendants - i.e. the CFAR Defendants (Movants herein) and the FTX Foundation Defendant (a non-Debtor), on the basis that the Transfers were actually or constructively fraudulent. The Complaint seeks to *recover* the value of the Transfers from the CFAR Defendants but not from Defendant FTX Foundation. Additionally, the Complaint alleges that one CFAR Defendant, Lightcone RG was somehow  unjustly enriched.  The Complaint is fatally flawed in several respects.

Given the numerous dispositive deficiencies in the Complaint, the CFAR Defendants submit this opening brief ("Brief") in support of their *Motion to Dismiss Plaintiffs' Complaint* (the "Motion"), pursuant to Civil Rules 9(b), 12(b)(1) and 12(b)(6), made applicable to these proceedings by Bankruptcy Rules 7009 and 7012. The Motion seeks to dismiss all claims asserted against the CFAR Defendants in the Complaint. Pursuant to Bankruptcy Rule 7012, the CFAR Defendants do not consent to entry of final orders or judgments by the Court in this adversary proceeding.

## II.    SUMMARY OF ARGUMENTS

The Complaint should be dismissed in its entirety for failure to state a claim.

In particular, Plaintiffs have not and cannot sufficiently plead the existence of an enforceable interest in the funds they seek to recover. Simply, Plaintiffs cannot assert an interest or "recover" property that wasn't theirs or, at a minimum, hasn't been plausibly pleaded as theirs.

Plaintiffs expressly alleged that *non*-Debtor FTX Foundation was the "Transferor" of 14 of the 15 Transfers. Plaintiffs do not even attempt to explain a basis for asserting rights in connection with Transfers they admit were made by a Transferor which is neither a Debtor nor a Plaintiff in this case.

1

Plaintiffs assert that the other Transfer was made by Debtor FTX Trading, Ltd. but simultaneously raise questions about the veracity or reliability of that assertion by alleging that non-Debtor FTX Foundation "directed" or "caused" the transfer of all of the alleged Transfers and that the Transfers were comprised "of commingled funds from Alameda and FTX accounts." Compl., ¶¶ 5, 45. Plaintiffs admit that the Debtor Transfer was made from comingled accounts which included customer property, including customer deposits that were "divert[ed] . . . to Alameda . . .." Compl., ¶ 31. Plaintiff is unable to make a single non-contradicted or non-conclusory allegation that any Transfer was actually made from property of the Debtors' estate. Accordingly, Plaintiffs have not plausibly alleged an enforceable interest in the Transfers and all claims against the CFAR Defendants must fail.

Alternatively, to the extent Plaintiffs' allegations are sufficient to allege an enforceable interest (they are not), they have failed to plead their fraudulent transfer claims with particularity. In order to sufficiently allege "actual" fraud, the Plaintiffs must show that the alleged fraudulent intent is related to the transfers sought to be avoided. Here, none of the fraud allegations relate to the Transfers allegedly made to the CFAR Defendants in connection with charitable grants. The Complaint likewise fails to allege sufficient "badges of fraud" necessary to raise a plausible inference of fraud.

Additionally, as to the constructive fraud, the Plaintiffs admit that Debtors received value from their philanthropic efforts and they were not insolvent at the time the transfers were made.

Even if Plaintiffs had adequately alleged the avoidability of the Transfers (they didn't), they failed to address how recovery of avoided transfers would be for the benefit of the bankruptcy estate since the Debtors' Plan provides for creditors to be paid in full and they cannot recover more than 100%. Moreover, the Plaintiffs admit in their Disclosure Statement that they already

recovered $20 million from non-Debtor FTX Foundation, the alleged Transferor "[b]y conducting asset tracing" to identify funds "that were entirely funded through transfers from Debtor WRSS, Debtor North Dimension, Inc. and Debtor FTX Trading Ltd., ostensibly for the benefit of the FTX Foundation." BK Doc. No. 19143 at p. 66. Having already traced and recovered the monies that "were entirely funded [by Debtors]" the Complaint fails to allege any basis to recover additional funds (presumably not "entirely funded" by Debtors) from FTX Foundation or any transferee thereof. Notably, the Complaint does not allege that FTX Foundation was a transferee or, as would necessarily follow, that any of the CFAR Defendants that allegedly received the Transfers from FTX Foundation were subsequent transferees.

Importantly, one CFAR Defendant, LCI did not exist as of any of the Transfers were allegedly made, thus it could not possibly have been an "initial transferee or entit[y] for whose benefit such transfers were made" as alleged by Plaintiffs. As the last Transfer alleged in the Complaint occurred twelve (12) days before LCI was formed, even if all of the allegations in the Complaint are viewed in a light most favorable to Plaintiffs, Plaintiffs lack a basis to recover the Transfers from LCI. Similarly, Lightcone RG was not formed until after the first four transfers were made and, thus, at minimum, it cannot be the initial transferee of Transfers 1-4.

As to unjust enrichment, Plaintiffs fail to notify the CFAR Defendants of the amount or dates on which such purported enrichment occurred. Moreover, while Plaintiffs allege that the enrichment stemmed from "the receipt of the funds used to purchase the Rose Garden Inn" (Compl., ¶ 82) they also allege that an unrelated third party, Slimrock Investments, was actually the entity that "provided Lightcone with a $20 million loan for the purchase and renovations of the [Rose Garden Inn]." Compl., ¶ 48. The only other allegation about funding for the hotel alleges that Transfer 3 and Transfer 4 were wired from a Debtor account "*to a title company* as an initial

deposit for Lightcone RG's acquisition of the Rose Garden Inn." Compl., ¶ 47 (emphasis added). There is no explanation for how transfers to a title company can be recovered from any of the Defendants (two of which didn't exist at the time). Additionally, publicly-available records establish that after holding the funds for some time, the title company turned them over to the State of California as unclaimed property.  A true and correct copy of the unclaimed property notice is attached hereto as **EXHIBIT A** and incorporated herein by reference.

Plaintiff's claim under Sections 502 should be dismissed because none of the CFAR Defendants filed a claim such that it could be disallowed.

For these and all the other reasons further detailed herein, the CFAR Defendants respectfully request that the Court dismiss the Plaintiffs' Complaint with prejudice.

### III.    CONCISE STATEMENT OF FACTS

#### A.    The Debtors

On or about November 11 and 14, 2022 (the "Petition Date"), each of the Debtors, except Emergent Fidelity Technologies Ltd. filed voluntary petitions for relief pursuant to Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.  Prior to their collapse, the FTX Group operated cryptocurrency exchanges and trading businesses.  *See* Compl., ¶ 24. The FTX Group's businesses permitted customers to invest in and trade cryptocurrencies on an exchange.  *See* Compl., ¶¶ 4, 24.

Customers' investments were governed by Terms of Service (the "Terms of Service") and User Agreements (the "User Agreement" and collectively with the Terms of Service, the "Account Terms").  *See* BK Doc. No. 337, ¶¶ 22-23.  True and correct copies of the Terms of Service and User Agreement are attached hereto, respectively as **EXHIBIT B** and **EXHIBIT C** and incorporated herein.  Customers' acceptance of the Account Terms was a prerequisite to the opening of an account.  See Compl., ¶¶ 26, 31, 38. The Account Terms clearly and unambiguously

declare that title to customer deposits remained with the customer.  *See* BK Doc. No. 337-1, at *18-144.

**B.      The CFAR Defendants**

CFAR is a non-profit, charitable organization formed under Section 501(c)(3) of the Internal Revenue Code of 1986.  LC Rose Garden, a wholly owned subsidiary of CFAR, is a non-profit single-member LLC formed and incorporated under the laws of the State of California on September 1, 2022. LCI, is a non-profit charitable organization formed under section 501(c)(3) of the Internal Revenue Code of 1986 formed and incorporated under the laws of the State of Delaware on October 13, 2022.  *See*  http://www.iciscorp.delaware.gov/ECorp/EntitySearch/NameSearch.aspx (last observed:  July 15, 2024).  Notably, LCI is not in a parent/subsidiary relationship with LC Rose Garden or otherwise legally affiliated with the CFAR family.

Generally speaking, CFAR conducts research, experiments, and educational workshops concerning the evolving relationship between human intelligence and technological innovation.  At relevant times, CFAR operated the "Lightcone Infrastructure Project," a fiscally sponsored project[2] that built infrastructure for the longtermist community, primarily by backchaining from positive AI outcomes.  The Lightcone Infrastructure Project was not and is not a formal, legal entity and it is not a Defendant in this adversary proceeding.

**C.      FTX Foundation**

Defendant FTX Foundation was the charitable arm of the FTX Group.  *See* BK Doc. No. 1704-1, at 25-26.  It received funding for its philanthropic pursuits from non-Debtor entities as well as from Debtors and Debtor accounts containing commingled customer funds.  *See* Compl.,

---

[2] A fiscally sponsored project involves a nonprofit organization extending its tax-exempt status to select groups engaged in activities related to the organization's mission.

¶ 38.  Defendant FTX Foundation, which "ceased operations when FTX collapsed in November 2022" is not a debtor in these jointly administered bankruptcy proceedings.  *See*  Compl., ¶¶ 13, 39.

**D.    Adversary Action**

On May 13, 2024, Plaintiffs filed suit against Defendants pursuant to Sections 105, 502 544, 548 and 550 of the Bankruptcy Code and Title 6, Sections 1304 and 1305 of the Delaware Code.  *See* Compl.  Plaintiffs seek, *inter alia*, to avoid and recover the following donations made to the CFAR Defendants:

| Transfer # | Date | Transferor (as alleged in Complaint at ¶ 6) | Amount |
|---|---|---|---|
| 1 | March 3, 2022 | FTX Trading Ltd. (DEBTOR)*<br><br>*The Complaint also alleges: (i) "FTX Foundation directed" the Transfers "of commingled funds from Alameda and FTX accounts to make donations to the CFAR Defendants" (Compl. ¶ 5); and (ii) FTX Foundation "caused [Transfer 1] to be wired to CFAR from an [unspecified] FTX bank account." (Compl. ¶ 45). | $2,000,000 |
| 2 | July 8, 2022 | FTX Foundation (NON-DEBTOR) | $370,000 |
| 3 | July 13, 2022 | FTX Foundation (NON-DEBTOR) | $500,000 |
| 4 | Aug. 18, 2022 | FTX Foundation (NON-DEBTOR) | $500,000 |
| 5 | Sept. 20, 2022 | FTX Foundation (NON-DEBTOR) | $34,999.61 |
| 6 | Oct. 3, 2022 | FTX Foundation (NON-DEBTOR) | $160,000 |
| 7 | Oct. 3, 2022 | FTX Foundation (NON-DEBTOR) | $150,000 |
| 8 | Oct. 3, 2022 | FTX Foundation (NON-DEBTOR) | $160,000 |
| 9 | Oct. 3, 2022 | FTX Foundation (NON-DEBTOR) | $150,000 |
| 10 | Oct. 3, 2022 | FTX Foundation (NON-DEBTOR) | $160,000 |
| 11 | Oct. 3, 2022 | FTX Foundation (NON-DEBTOR) | $160,000 |

| 12 | Oct. 3, 2022 | FTX Foundation (NON-DEBTOR) | $150,000 |
| 13 | Oct. 3, 2022 | FTX Foundation (NON-DEBTOR) | $100,000 |
| 14 | Oct. 3, 2022 | FTX Foundation (NON-DEBTOR) | $160,000 |
| 15 | Oct. 3, 2022 | FTX Foundation (NON-DEBTOR) | $150,000 |

Without differentiating between Defendants, Plaintiffs attempt to plead fraudulent conveyance avoidance claims under the Bankruptcy Code and the Delaware Code, respectively. *See* Compl., ¶¶ 53-77.  The Plaintiffs allege that Transfer 1 was the sole transfer made by a *Debtor*. Plaintiffs identify Defendant (not Plaintiff) FTX Foundation, a non-debtor entity, as the transferor that made the 14 remaining transfers (the "Non-Debtor Transfers"). Despite naming FTX Foundation as a defendant, Plaintiffs' count for recovery of the value of the Transfers, seeks to recover solely from the CFAR Defendants, identified therein as the alleged "initial transferees or the entities for whose benefit such transfers were made." Compl., ¶ 80.

Plaintiffs assert a separate claim for unjust enrichment, only against LC Rose Garden, but fail to specify a basis.  *See* Compl., ¶¶ 81-85. Further, Plaintiffs ask the Court to disallow any claims of the CFAR Defendants against the Debtors' estate, even though no CFAR Defendant asserted a claim.  *See* Compl., ¶¶ 86-88.

## IV.    ARGUMENT

### A.    Legal Standard

The Court should dismiss the Complaint based on Plaintiffs' failure to state a claim upon which they may be granted relief. *See* Fed. R. Civ. P. 12(b)(6). A motion under Civil Rule 12(b)(6) tests the legal sufficiency of the factual allegations, in which the plaintiff must plead a plausible claim for relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In the Third Circuit, the courts follow a three-step process. *See Halperin v. Arawak IX, LP (In re HRB Winddown Inc.)*, Adv. Proc. No. 21-51412-BLS, 2024 WL 1099724, *4 (Bankr. D. Del. Mar. 13, 2024) (quoting *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Liquidation Trust v. Uphold HQ Inc. (In re Cred Inc.)*, 650 B.R. 803, 812-13 (Bankr. D. Del. 2023). "Finally, 'where there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *See In re HRB Winddown Inc.*, 2024 WL 1099724, at *4 (quoting *Burtch*, 662 F.3d at 221 (quoting *Santiago*, 629 F.3d at 130)). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *In re Cred Inc.*, 650 B.R. at 813 (internal citations omitted).

Alternatively, the Court should dismiss the Complaint based on Plaintiffs' failure to plead their claims for relief in accordance with the Civil Rules. Generally, the court must examine the pleadings to determine whether the facts alleged in a complaint are sufficient to show that a plaintiff

has a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal citations omitted). Whether a claim is plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "A plausible claim does more than merely allege entitlement to relief; it must also demonstrate the basis for that 'entitlement with its facts.'" *Parkell v. Lyons*, No. 17-1496-LPS, 2019 WL 1435885, *1 (D. Del. Mar. 31, 2019) (internal citations omitted). The plaintiff bears the burden of "plead[ing] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Allegations of fraud invoke Civil Rule 9(b)'s "more rigorous pleading requirement," *Purpura v. JP Morgan Chase*, No. 16-3765-JMV-LDW, 2018 WL 1837952, *9 (D. N.J. Apr. 18, 2018); *see also Giuliano v. Ferdinand (In re Liquid Holdings Grp., Inc.)*, Adv. Proc. No. 17-50662-KG, 2018 WL 2759301, *6 (Bankr. D. Del. June 6, 2018), in which the plaintiff must "state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b). A mere recitation of the elements of fraud will not suffice. *See Insys Liquidation Tr. v. Quinn Emanuel Urquhart & Sullivan, LLP (In re Insys Therapeutics, Inc.)*, Adv. Proc. No. 21-50359 -JTD, 2021 WL 5016127, *5 (Bankr. D. Del. Oct. 28, 2021) (dismissing fraudulent transfer claim where the complaint merely recites the elements of 11 U.S.C. § 548); *Burch v. Opus, L.L.C. (In re Opus E., L.L.C.)*, 480 B.R. 561, 572 (Bankr. D. Del. 2012) (dismissing trustee's claims under Civil Rule 9(b) because they lacked details about who, when and where the allegedly fraudulent statement was made). The plaintiff must aver facts "to place the defendant[] on notice of the precise misconduct with which they are charged …" *Id.* at 573. The heightened pleading requirement applies to fraudulent conveyance claims. *See Off. Comm. of Unsecured Creditors of Fedders N. Am., Inc. v. Goldman Sachs Credit Partners L.P. (In re Fedders N. Am., Inc.)*, 405 B.R. 527, 544 (Bankr. D. Del. 2009) ("Federal Rule of Civil Procedure 9(b) requires those asserting fraudulent transfer claims

in bankruptcy proceedings to plead them with specificity.") (citing *OHC Liquidation Trust v. Nucor Corp. (In re Oakwood Homes Corp.)*, 325 B.R. 696, 699 (Bankr. D. Del. 2005)); *Miller v. SWZ Fin. II, LLC (In re United Tax Grp., LLC)*, Adv. Proc. No. 15-50880-LSS, 2018 WL 1135496, *2, 8-9, n.55 (Bankr. D. Del. Feb. 28, 2018) (finding allegations related to fraudulent conveyance claims insufficient to satisfy Civil Rule 9(b)). In order to satisfy Civil Rule 9(b), the plaintiff must set forth facts demonstrating the fraudulent nature of the relevant transfers. *See In re Oakwood Homes Corp.*, 325 B.R. at 699 (granting defendant's motion to dismiss fraudulent conveyance claims). In the absence thereof, the plaintiff's identification of the relevant transfers alone warrants dismissal of the claim. *See id.*; *In re Fedders N. Am., Inc.*, 405 B.R. at 544.

    **B.**    **Analysis**

        **1.**    **THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE PLAINTIFFS FAILED TO PLAUSIBLY PLEAD AN ENFORCEABLE INTEREST IN THE TRANSFERS**

The Complaint should be dismissed in its entirety because the Plaintiffs did not and cannot plausibly plead that the Debtors had an enforceable interest in the Transfers. *See* 11 U.S.C. § 548(a)(1) (referring to transfers of "an interest of the debtor in property"); 11 U.S.C. § 544(a) ("The trustee . . . may avoid any transfer of *property of the debtor ...*") (emphasis added).

According to the Complaint, Defendant FTX Foundation, a non-debtor entity, made 14 of the 15 alleged Transfers. *See* Compl. (identifying FTX Foundation as "Transferor" of Transfers 2 - 15). While one of the Debtors, FTX Trading Ltd., is identified as the Transferor of the sole remaining transfer (Transfer 1), Plaintiffs fail to allege non-contradicted facts to demonstrate an enforceable interest in that Transfer. Indeed the Complaint states that a different entity, Defendant and non-Debtor FTX Foundation, "caused [Transfer 1] to be wired to CFAR from an [unspecified] FTX bank account." Compl., ¶ 45. Further muddying the waters, the Complaint also asserts that Defendant and non-Debtor FTX Foundation "directed not less than $4,904,999.61 of commingled

funds from Alameda and [unspecified] FTX accounts to make donations to the CFAR Defendants." Compl., ¶ 5.  It is unclear if that statement is meant to indicate that the funds (which equal the total of the alleged Debtor and Non-Debtor Transfers) were sent to CFAR directly from a Debtor as the transferor or if it is meant to indicate that Defendant FTX Foundation was actually the transferor of Transfer 1 (in addition to the Non-Debtor Transfers), by either having the funds sent to itself as an initial transferee or by using funds it already had in its account to then "make donations to the CFAR Defendants."  Compl., ¶ 5.  *See also* Compl., ¶ 45.

In addition to the jumbled allegations in the Complaint, Debtors admit that they cannot trace the Transfers because they did not properly account for intercompany transfers prior to the Petition Date.  BK Doc. No. 18976, at 88 (describing how, at the FTX Group, "[i]ntercompany transactions were not properly documented and assets were extensively comingled.").

Moreover, it is well settled that stolen funds are not part of the Debtors' estates..  *See, e.g., W. Oil & Gas JV, Inc. v. Castlerock Oil Co.*, 91 Fed. Appx. 901, 902-3 (5th Cir. 2003) ("A person cannot fraudulently transfer an asset that he does not own."); *see also Flint Ink Corp. v. Calascibetta*, Case No. 06-2517-GEB, 2007 WL 2687415, *1 (D. N.J. Sept. 10, 2007) (finding that because the funds at issue were monies "previously misappropriated to cover payroll costs, and returned to the Funding Account thereafter . . . [they] ceased to be property of the estate."). The Debtors lack an interest in stolen funds as part of "one of the largest fraudulent schemes in U.S. history." Compl., ¶ 39.  *See Alliance Bancorp. v. Select Mortg., L.L.C.*, No. 274853, 2008 WL 724092 (Mich. Ct. App. Mar. 18, 2008) (holding that the Uniform Fraudulent Transfer Act did not apply to transfers of stolen money); *Kitchen v. Boyd (In re Newpower)*, 233 F.3d 922, 929-31 (6th Cir. 2000) (holding that "[t]here is no basis for a constructive trust as to the stolen property in the hands of the thief because of his lack of a property interest"). Plaintiffs can only recover

11

property of *the Debtors'* estates in this adversary proceeding.  See, e.g. 5 COLLIER ON BANKR. § 548.03 (16th ed. 2023) ("[N]ot all transfers are within [S]ection 548's scope; only those that affect property that would have been property of the estate but for the transfer.").  The Complaint impermissibly seeks the avoidance and recovery of transfers that have not been and cannot be sufficiently pleaded as property of the Debtors' estates under Sections 541, 548, and 550 of the Bankruptcy Code. Accordingly, the Court must dismiss Plaintiffs' claims with prejudice.

a.    The Complaint Does Not Sufficiently Plead an Enforceable Interest in the FTX Trading Transfer

Although Plaintiffs state that Transfer 1 was made by Debtor FTX Trading Ltd., this allegation is questionable in light of the contradictory or vague allegations on this point. Nevertheless, even if the Court accepted Plaintiffs' most favorable pleading as true and ignored contradictions and ambiguities, the claim still fails as a matter of law, because the Complaint does not demonstrate that the Debtor Transfer involved an interest of any of the Debtors in property, let alone a particular Debtor or, specifically, one of the Debtors that is also a Plaintiff in this adversary proceeding.  *See* 11 U.S.C. § 548(a)(1).

As of the commencement of a case under the Bankruptcy Code, an estate is created with all the legal and equitable rights of the debtor.  *See* 11 U.S.C. § 541(a).  However, the express language of Section 541 of the Bankruptcy Code makes clear that funds held by a debtor for a third party are not part of the debtor's bankruptcy estate.  *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95 (3d Cir. 1994). Thus, even if Plaintiffs have sufficiently identified a particular debtor (and Plaintiff) whose funds were allegedly transferred, such allegation is not enough given that by Debtors' own admission, funds held by Debtors were diverted and taken from customers. *See* Compl., ¶¶ 5, 26, 31, 34 (asserting that comingled funds from Alameda and FTX accounts; Debtors "unlawfully diverted assets" from the FTX.com crypto exchange; describing "loans" from

12

Alameda to unspecified "Defendants" and recognizing that customer funds were needed for the Alameda transactions).

Whether any particular Debtor (and Plaintiff) held title to any comingled funds that were purportedly transferred to the CFAR Defendants through Transfer 1 is a question of applicable non-bankruptcy law. *See Girardi v. Miller (In re Keese)*, 671 F. Supp. 3d 1053 (C.D. Cal. May 1, 2023) ("Federal law determines what property is included in the estate, while state law controls whether the debtor has a legal or equitable interest in the property at the time the bankruptcy case is filed.") (internal quotations omitted). Here, there is no allegation to sufficiently assert that, despite all of the party admissions about commingling amongst Debtors and with customer funds, Transfer 1 consisted of Debtor property (and importantly, *Plaintiff* property). Notably, assets held in customer accounts (or diverted before getting there) were assets of the customers, not Debtors.

It is generally accepted that the Debtors' customers entered into or accepted Terms of Service or User Agreements as a condition precedent to opening an account.[3] BK Doc. No. 337, ¶¶ 22-23. The User Agreements were governed by the laws of the State of California and the Terms of Service are subject to English law. Both California and English law interpret contracts according to their plain meaning. *See* CA. Civ. C. § 1644 ("The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning;

---

[3] The court may consider "'documents incorporated into the complaint by reference and matters of which a court may take judicial notice[,]'" *Off. Comm. of Unsecured Creditors of Champion Enters. Inc. v. Credit Suisse, (In re Champion Enters., Inc.)*, Adv. Proc. No. 10-50514-KG, 2010 WL 3522132, *4 n.7 (Bankr. D. Del. Sept. 1, 2010) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)), and need not accept as true allegations in the complaint contradicted by such documents. *See James Cable, LLC v. Millennium Digital Media Sys., LLC (In re Broadstripe, LLC)*, 435 B.R. 245, 254 n.31 (Bankr. D. Del. 2010). The court may also consider matters of public record. *See Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004) abrogated on other grounds, *Humana, Inc. v. Indivior, Inc.*, No. 21-2573 & 21-2574, 2022 WL 17718342, *1 (3d Cir. Dec. 15, 2022) (non-precedential opinion); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Further, the court may consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Ruddy v. U.S. Postal Serv.*, 455 F. App'x 279, 283 (3d Cir. 2011) (internal citations omitted). *See also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (stating a court may also consider any "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case") (internal citations omitted).

unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed."); *Crown Cork & Seal Tech. Corp. v. Cont'l Pet Tech. Inc.*, 232 F. Supp. 2d 294, 298 (D. Del. 2002) ("Under English law, the words of a contract are interpreted in accordance with their plain and ordinary meaning.").  When a contract is clear and unambiguous on its face, the court must enforce its terms.  *Id.*; *Vital Distributions, LLC v. Pepperidge Farm, Inc.*, No. 2:22-cv-319-MCE-KJN, 2024 WL 1484198, *11 (E.D. Cal. Apr. 6, 2024).

The Account Terms unambiguously state that title to funds in a customer account remains with the customer.  *See* Ex. B, § 6 ("Title to cryptocurrency represented in your FTX.US Account shall at all times remain with you and shall not transfer to FTX.US."); Ex. C, § 8.2.6. ("Title to your Digital Assets shall at all times remain with you and shall not transfer to FTX Trading."). This point is incontrovertible, and by operation of non-bankruptcy law, the customers' Digital Assets were not property of the Debtors' estates.  *See* 11 U.S.C. § 541(d); *Begier v. I.R.S.*, 496 U.S. 53, 59 (1990) ("Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate.'").  Because Section 548 of the Bankruptcy Code is limited to the avoidance and recovery of a debtor's interest in property, Plaintiffs' claims fail as a matter of law.

        b.     <u>The Complaint Does Not Sufficiently Plead An Enforceable Interest In The Non-Debtor Transfers</u>

Plaintiffs' claims to recover the Non-Debtor Transfers allegedly made by Defendant and non-Debtor FTX Foundation must be dismissed, as the Complaint fails to allege the Debtors' enforceable interest in the funds. First and foremost, there can be no dispute that Defendant and non-Debtor FTX Foundation is neither a Plaintiff in this Adversary Proceeding nor a Debtor in the jointly-administered bankruptcy proceedings. *See* Compl., ¶ 39. Second, Plaintiffs admit that

Defendant and non-Debtor FTX Foundation was the "Transferor" who made each of the Non-Debtor Transfers as "donations to the CFAR Defendants." Compl,, ¶¶ 5-6. Accordingly, the Non-Debtor Transfers did not affect the Debtors' interest in property and Plaintiffs' claims under Section 548 of the Bankruptcy Code fail as a matter of law.

Plaintiffs allege that "FTX Foundation's primary source of funds was Alameda monies that had been commingled with FTX customer deposits." Compl., ¶ 38. In other words, they admit that the funding that allegedly came from Debtors was comingled with customer funds and that even such comingled funds were not the sole source of Defendant and non-Debtor FTX Foundation's funding. *See id.* Plaintiffs also contradict these allegations by asserting, that Alameda "'borrow[ed]' billions of dollars from FTX.com in order to, *inter alia,* finance 'loans' from Alameda to Defendants" but nothing in the Complaint alleges that any Defendant, let alone a CFAR Defendant, received a loan (or any type of transfer) from Alameda. Compl., ¶ 34. The only other allegation that mentions a loan from Alameda asserts that Defendant and non-Debtor FTX Foundation made two payments (Transfers 3 and 4) "to a title company" and that such transfers were "intended as a loan." Compl. ¶ 47. Further confusing matters, in reference to all of the Transfers (including the 14 non-Debtor Transfers), the Complaint states that "Plaintiffs made the transfers . . . to Defendants" Compl,, ¶ 54.  The myriad differing theories make it impossible to know what Plaintiff actually intended to plead and Plaintiffs cannot have it both ways (or all ways as the case may be).  *In re Bittrex*, Case No. 23-10598-BLS, 2024 WL 2347311, *13 (Bankr. D. Del. May 22, 2024).

However, to the extent that the Plaintiffs intend to argue that Defendant FTX Foundation's funds – either all of them or the specific funds transferred to CFAR - were property of the Debtors' estates, they would need to plead facts tracing the Non-Debtor Transfers to their source. The Complaint is devoid of such allegations.  Instead, the Debtors have admitted that "[a]ttempts have

been made to identify intercompany transactions and the inability to do so comprehensively - let alone to analyze and settle all intercompany litigation claims – is supported by the record of the work so far." BK Doc. No. 18976 at 89.  Simply put, the Debtors lack the ability to trace the comingled funds that they seek to recover from the CFAR Defendants; to identify it as debtor property or to connect it to any fraudulent conduct. Instead, the record is clear that Defendant and non-Debtor FTX Foundation was a separate organization with its own, independent sources of funding.

Nonetheless, even if Plaintiffs could trace each Non-Debtor Transfer to one of the Debtors' accounts (which is contrary to what they pleaded), their claims still warrant dismissal, because monies in Debtors' accounts consisted largely of customer property according to the Account Terms.  *See* Ex. B-C.

Given Plaintiffs' conduct, this Court may: (1) take judicial notice of Plaintiffs' admission that Defendant and non-Debtor FTX Foundation was the "Transferor" of the Non-Debtor Transfers, which were made as charitable donations to the CFAR Defendants, *see Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269, 275 (3d Cir. 2004) (denying appeal because the appellant "expressly conceded those facts [that she challenged on appeal] in her complaint."); (2) disregard Plaintiffs' factually unsupported legal conclusion that "Plaintiffs made the Transfers" as loans to the CFAR Defendants, *see Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986) ("on a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'")); and (3) find that the contradictory allegations do not provide a legally sufficient basis to deny this Motion, *see Talley v. Christiana Care Health Sys.*, No. 17-926-CJB, 2018 WL 4938566, *5 n.4 (D. Del. Oct. 11, 2018) ("While the Court must accept as true all well-pleaded facts at the Rule 12(b)(6) stage, it need not accept allegations that are contradicted by other

allegations in the FAC"). Accordingly, Plaintiffs cannot recover the Non-Debtor Transfers as Defendant FTX Foundation is neither a Debtor nor a Plaintiff in this adversary proceeding. *See* Compl., ¶ 6 (identifying FTX Trading Ltd. as the "Transferor" of the Debtor Transfer (totaling $2 million)); *see also* Compl., p. 1 n.1 (not identifying FTX Defendant as a Debtor); Compl., ¶ 13 (not identifying FTX Defendant as a Plaintiff).

Because Plaintiffs have no enforceable interest in the funds they seek to recover, they cannot avoid the Transfers based on fraud (Counts One, Two, Three, and Four), recover the value of the Transfers under 11 U.S.C. § 550 (Count Five), claim unjust enrichment (Count Six), or obtain disallowance of (non-existent) claims under 11 U.S.C. § 502 (Count Seven). Accordingly, the Complaint should be dismissed in its entirety.

2.    **COUNTS 1, 2, 3, AND 4 FAIL TO STATE A CLAIM FOR FRAUDULENT TRANSFERS WITH PARTICULARITY**

Assuming *arguendo* that any of the funds at issue were property of the Debtors' estates, Plaintiffs fail to plead (let alone plead with particularity) sufficient facts to allow Defendants to properly prepare their defenses. Plaintiffs allege that from March 2022 through October 2022 the CFAR Defendants received the Transfers. *See* Compl., ¶ 6. While the first transfer was allegedly made by FTX Trading, Ltd., a Debtor entity, the remaining 14 transfers were allegedly made by FTX Foundation, a non-Debtor (and also one of the Defendants, not Plaintiffs, in this action). Plaintiffs do not specify which of the CFAR Defendants allegedly received which of the 15 transfers. Notably, LC Infrastructure was not yet formed at the time any of the transfers were allegedly made, and LC Rose Garden was not yet formed at the time the first four transfers were allegedly made. Additionally, in one of the few specific allegations, Debtors allege that a title company, rather than any of the Defendants, was the recipient of 2 of the 15 transfers.

Additionally, Debtor has not and cannot plausibly plead insolvency for purposes of

establishing actual intent of any Transferor or in connection with allegations of any constructive fraud. Any allegation of insolvency, at any relevant time, could not be supported in light of the publically-available evidence concerning the Debtors' finances, including its proposed plan of reorganization that provides for payment of general unsecured creditors **in full**, with interest. *See* BK Doc. No. 18975-76 (providing for 125% estimated recovery for General Unsecured Creditors and 100% of higher recovery for all classes other than insider/intercompany, subordinated, and equity). Using Petition Date values, the Debtors' assets exceeded that of their general unsecured creditors. Additionally, on November 7, 2022 - more than 1 month AFTER all of the Transfers at issue herein and more than 8 months after the only Transfer allegedly made from a Debtor - Debtors' counsel represented that the financial condition of FTX Trading Ltd., the entity that purportedly made Transfer 1, was "rock solid." A true and correct copy of the relevant e-mail is attached hereto as **EXHIBIT D** and incorporated herein by reference. Thus, Plaintiffs cannot plausibly that that FTX Trading was insolvent at any relevant time, subsequently became rock solid and solvent just prior to the bankruptcy, and then abruptly became insolvent again (especially when the alleged intermittent recurring insolvency is betrayed by various party admissions). Accordingly, Counts One, Two, Three, and Four of the Complaint must be dismissed.

### 3.   COUNTS 1 AND 3 SHOULD BE DISMISSED BECAUSE PLAINTIFFS' ACTUAL FRAUD ALLEGATIONS FAIL TO STATE A CLAIM FOR RELIEF

Counts One and Three of the Complaint should be dismissed for failing to set forth a cause of action for actual fraud. To avoid a transfer under 11 U.S.C. § 548(a)(1)(A) and the DUFTA, a plaintiff must show that the transaction was made "with actual intent to hinder, delay or defraud" creditors. 11 U.S.C. § 548(a)(1); 6 *Del. C.* § 1304(a)(1); *see also Autobacs Strauss, Inc. v. Autobacs Seven Co., Ltd. (In re Autobacs Strauss, Inc.)*, 473 B.R. 525, 567 (Bankr. D. Del. 2012) ("It is undisputed that [DUFTA] track[s] section 548 of the Bankruptcy Code.").

To evaluate whether the *transferor* had actual fraudulent intent, courts consider certain "badges of fraud", including: "(i) [t]he relationship between the debtor and the transferee; (ii) [c]onsideration for the conveyance; (iii) [i]nsolvency or indebtedness of the debtors; (iv) [h]ow much of the debtor's estate was transferred; (v) [r]eservation of benefits, control or dominion by the debtor over the property transferred; and (vi) [s]ecrecy or concealment of the transaction."[4] *Beskrone v. OpenGate Capital Group, LLC (In re Pennysaver USA Publishing, LLC)*, 602 B.R. 256, 271 (Bankr. D. Del. 2019) (quoting *In re Fedders N. Am., Inc.*, 405 B.R. at 545).

"The presence or absence of any single badge of fraud is not conclusive." *Id.*  In fact, courts routinely dismiss actual fraudulent transfer claims where, as here, a plaintiff makes inadequate allegations to support an inference of fraud. *See, e.g.*, *Kirschner v. Shareholders (In re Trib. Co. Fraudulent Conv. Litig.)*, 10 F.4th 147, 162 (2d Cir. 2021) (The "district court correctly held that the Trustee failed to plead 'badges of fraud' sufficient to raise a strong inference of actual fraudulent intent …").

Additionally, Plaintiffs do not make a single factual allegation as to insolvency or indebtedness of the non-Debtor Transferor, FTX Foundation.

Here, Plaintiffs' claims are limited to a series of conclusory assertions.  Compl., ¶ 52.  None of those conclusions are sufficient to support an inference of actual intent to hinder, delay, or defraud the Debtors' creditors so as to state a claim against the CFAR Defendants under either 11 U.S.C. § 548(a)(1) or 6 *Del. C.* § 1304(a)(1).  For example, whether Mr. Bankman-Fried concealed

---

[4] 6 *Del. C.* § 1304(b) suggests similar and additional badges of fraud as follows: "(1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer was undisclosed or concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all of the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor."  6 *Del. C.* § 1304(b).

Plaintiff's assets reveals nothing about the particular Transfers at issue in this litigation.  *Compare* Compl., ¶¶ 6, 52.

In order to prosecute a claim based on actual intent to hinder, delay, or defraud a creditor, a plaintiff must show that the alleged fraudulent intent is *related to the transfers* sought to be avoided.  *See*, *e.g.*, *Furr v. TD Bank, N.A. (In re Rollaguard Sec., LLC)*, 591 B.R. 895, 918 (Bankr. S.D. Fla. 2018) ("Just because a debtor is involved in a fraudulent scheme does not mean that every transfer made by that debtor is made with fraudulent intent.")  As discussed above, the CFAR Defendants are left guessing how much of the Transfers were misappropriated, by who and when. As Plaintiffs' allegations of fraud are not expressly tied to the Transfers, the Complaint fails to state a cause of action against the CFAR Defendants under 11 U.S.C. § 548(a)(1) and 6 *Del. C.* § 1304(a)(1).  As such, Counts 1 and 3 of the Complaint must be dismissed.[5]

> **4.      COUNTS 2 AND 4 SHOULD BE DISMISSED BECAUSE PLAINTIFFS' CONSTRUCTIVE FRAUD CLAIMS FAIL TO STATE A CLAIM FOR RELIEF**

In order to state a claim for constructive fraudulent transfer, Plaintiffs must allege that each Transfer was made: (i) in exchange for less than a reasonably equivalent value; and that each Transferor:

> i. was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; [or]
>
> ii. was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; [or]
>
> iii. intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

---

[5] The CFAR Defendants reserve the right to address each badge of fraud individually should Plaintiffs assert that the Complaint satisfies the requisite pleading standard.

11 U.S.C. § 548(a)(1)(B); *see also* 6 *Del. C.* § 1304(a)(2) (stating similar requirements, but omitting insolvency as a basis to establish the constructive fraud).

a.    <u>Reasonably Equivalent Value Exists for the Transfers</u>

"The Third Circuit dispels any notion that a debtor must receive a direct tangible economic benefit to receive 'value' for purposes of § 548 and recognizes cases decided by sister circuits concluding that gambling losses, *charitable contributions*, and money spent in a failed attempt to keep a business afloat can confer value." *In re F-Squared Inv. Mgmt, LLC*, 600 B.R. 294, 303 (Bankr. D, Del. 2019) (emphasis added). *See also Mellon Bank, N.A. v. Metro Commc'ns, Inc. (In re Metro Commc'ns, Inc.)*, 945 F.2d 635, 647 (3d Cir. 1991) (recognizing, in the context of an insolvency analysis, the value of "good will" as an intangible asset); *Global Outreach, S.A. v. YA Global Invs., L.P. (In re Global Outreach, S.A.)*, Adv. Proc. No. 09-01415-DHS, 2014 Bankr. LEXIS 4254, *1 (Bankr. D. N.J. Oct. 2, 2014) (finding that when assessing reasonably equivalent value, "[c]ourts may take into consideration indirect benefits created by the transaction, such as enhanced good will . . ..""); *Balaber-Strauss v. Lawrence (In re Churchill Mortg. Inv. Corp.)*, 256 B.R. 664, 682 (Bankr. S.D.N.Y. 2000) ("The financial position of a debtor need not necessarily be improved by a particular transaction in order for us to hold that value was given.") (quoting *Merrill v. Abbott (In re Independent Clearing House Co.)*, 41 B.R. 985, 999 (Bankr. D. Utah 1984)); *Ellenberg v. Chapel Hill Harvester Church, Inc. (In re Moses)*, 59 B.R. 815, 816  (Bankr. N.D. Ga. 1986) (finding that the "reasonably equivalent value" requirement in Section 548(a)(2)(A) does not require tangible value or a monetary equivalent); *In re Missionary Baptist Foundation  of Am., Inc*., 24 B.R. 973, 978 (Bankr. N.D. Tex. 1982) (finding the existence of reasonably equivalent value for charitable contributions made in accordance with the purpose of the non-profit organization).

Prior to its sudden collapse, FTX was widely revered in the cryptocurrency world,

promoting itself as a stable and philanthropic force. *See* Compl., ¶¶ 38-39. As Plaintiffs admit, the charitable donations "burnished Bankman-Fried's public image as a do-gooder."  Compl., ¶ 39. In the Third Circuit, this constitutes value.  *See*, *e.g.*, *Mellon Bank, N.A. v. Official Comm. of Unsecured Creditors of R.M.L., Inc. (In re R.M.L., Inc.)*, 92 F.3d 139, 152 (3d Cir. 1996) ("[S]o long as there is some chance that a contemplated investment will generate a positive return at the time of the disputed transfer, we will find that value has been conferred.").

b.   Insolvency or Indebtedness of the Debtors

"Insolvency is determined at the time of conveyance." *Jalbert v. Souza (In re F-Squared Inv. Mgmt., LLC)*, Case No. 15-11469 (LSS), 2019 WL 4261168, *11 (Bankr. D. Del. Sept. 6, 2019). Plaintiffs' conclusory allegations regarding insolvency are insufficient to serve as a basis to infer fraudulent intent. *See* Compl., ¶¶ 62, 75.  *See also In re United Tax Grp.*, Case No. 14-10486 (LSS), 2018 WL 1135496, *10 (Bankr. D. Del. Feb. 28, 2018) (rejecting "conclusory statement of insolvency").

As noted above, Plaintiffs do not allege insolvency, small capital, inability to pay debts, or anything else that could potentially implicate the financial badge as to Defendant and non-Debtor FTX Foundation.

Moreover, this Court should disregard Plaintiffs' allegations as to FTX Trading Ltd., because, as noted above, they are not supported by the publically available evidence concerning the Debtors' finances. Thus, Plaintiffs cannot plausibly allege that that FTX Trading Ltd. was insolvent at the time of Transfer 1.

Accordingly, Plaintiffs cannot state a cause of action for constructive fraud, as: (1) the Debtors' assets exceed the amount owed to secured and general, unsecured creditors; (2) the Debtors' remaining assets, totaling billions of dollars were not exceedingly small; and (3) there are no allegations that the Debtors intended to incur debts beyond their ability to pay; and (4) the Transfers

were not made to any insider.[6]

Because Plaintiffs have not and cannot state more than a conclusory allegation of insolvency, Counts 2 and 4 of the Complaint should be dismissed with prejudice. *See, e.g.*, *In re Cred Inc.*, 650 B.R. at 814, 834-35 (dismissing actual fraudulent transfer claims because badges of fraud were supported by "sparse" factual allegations and "conclusory statements"); *In re F-Squared Inv. Mgmt., LLC*, 2019 WL 4261168, at *11 (finding insufficient "conclusory statement" and mere "recitation of the word 'insolvency'" without "any specific allegations" supporting alleged insolvency); *Burtch v. Huston (In re USDigital, Inc.)*, 443 B.R. 22, 39 (Bankr. S.D.N.Y. 2011) (dismissing fraudulent transfer claim because plaintiff "failed to provide any support for allegations that [the debtor] was insolvent or was rendered insolvent" at time of transfer …").

### 5.      COUNTS 5 AND 7 SHOULD BE DISMISSED FOR FAILURE TO ADEQUATELY ALLEGE A PRIMARY VIOLATION

The United States' Supreme Court has held that while a complaint "does not need detailed factual allegations [to survive a motion to dismiss,] a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted).

### a.      Count 5 Should be Dismissed

Count 5 of the Complaint, which seeks to recover from the CFAR Defendants as "the initial transferees or the entities for whose benefit such transfers were made" under 11 U.S.C. § 550(a)(1), should be dismissed because, Plaintiffs have failed to adequately allege the avoidability of such Transfers under 11 U.S.C. §§ 544, 548. *See Majestic Star Casino, LLC v. Barden Dev., Inc. (In re Majestic Star Casino, LLC)*, 716 F.3d 736, 750 (3d Cir. 2013) (recognizing that 11 U.S.C. §

---

[6] The CFAR Defendants note that an examiner has been authorized to investigate and issue a supplemental report clarifying the issue of the Debtors' solvency (or lack thereof), among other things. *See* BK Doc. No. 19061. The CFAR Defendants patiently await his findings.

550(a)(1) only allows recovery of property from a transferee "whose transfer has been avoided …").

Additionally, even assuming, *arguendo*, that the Debtors had properly alleged a right to recover the Non-Debtor Transfers from the CFAR Defendants (which they do not), Plaintiffs cannot pursue the Non-Debtor Transfers because, pursuant to Section 550(d) of the Bankruptcy Code, Plaintiffs are "entitled to only a single satisfaction under subsection (a) of this section." 11 U.S.C. § 550(d); *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 185–86, 218–19 (3d Cir. 1992). Plaintiffs have already recovered $20 million from Defendant FTX Foundation on account of the funds which were allegedly traceable as property of the estate). *See* BK Doc. No. 15521, at p. 64 ("The Debtors worked with the treasurer of the FTX Foundation … to arrange for the return of the $20 million to the Debtors' estates."). The Complaint does not disclose this recovery or assert any legal basis for Plaintiffs to recover an additional $2,904,999.61 (the value of the alleged Non-Debtor Transfers) above the $20 million they traced recovered. Accordingly, even if Plaintiffs could establish that the funds held by Defendant and non-Debtor FTX Foundation were actually Debtor property, they would have to sufficiently allege that the funds they now seek to recover from the CFAR Defendants are not the same funds they already recovered.

Plaintiffs' claim to recover from LC Infrastructure must be dismissed, with prejudice, because it did not even exist when the Transfers were made and there is no allegation that it was a subsequent transferee. Similarly, Plaintiff cannot recover from LC Rose Garden, at least as to the first four Transfers since it did not exist at that time.

b.    <u>COUNT 7 Should be Dismissed.</u>

Count 7 of the Complaint, which seeks to disallow claims pursuant to Section 502(d) of the Bankruptcy Code, should be dismissed because the CFAR Defendants have not filed any

claims against the Debtors. *In re Zohar III, Corp.*, 639 B.R. 73, 103 (Bankr. D. Del. 2022) (finding that an unasserted claim could not be equitably subordinated).

### 6.      COUNT 6, ASSERTED ONLY AS TO LIGHTCONE RG,  FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT

To establish a claim for unjust enrichment, a plaintiff must prove: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010).   Plaintiffs do not allege that any of the Transfers were made to Lightcone RG.   Instead, the Complaint alleges that Lightcone RG was unjustly enriched "[a]s a result of the transfers to CFAR and Lightcone [Infrastructure]" (an entity that did not even exist at the time of the transfers). Compl., ¶ 82.  This allegation lacks any details about the amount or timing of the purported enrichment. However, Plaintiff further alleges that Lightcone RG was unjustly enriched "by the receipt of the funds used to purchase the Rose Garden Inn" which, it seems, is a reference to the two transfers which Plaintiff alleges were made to a title company, not to any of the Defendants.

Additionally, as previously noted, Plaintiffs fail to specify how "[a]ny and all benefits obtained by Lightcone RG as a consequence of [the payment from FTX Trading Ltd. or the payments from the Non-Debtor Transferor] were funded by Plaintiffs." Compl. ¶ 83. Thus, Plaintiffs have failed to show any relationship between their purported impoverishment and any enrichment of Lightcone RG. Plaintiffs similarly have failed to show the absence of justification of any purported enrichment received by Lightcone RG, yet alone even address this requisite element of their cause of action.   As Count 6 fails to notify the CFAR Defendants of how Lightcone RG was unjustly enriched or the amount of such enrichment, it must be dismissed.

## V.      **CONCLUSION**

For the reasons set forth above, Defendants Center for Applied Rationality, Lightcone Infrastructure, Inc., and Lightcone Rose Garden LLC respectfully request that the Court dismiss the Complaint with prejudice.

Dated:  July 15, 2024                                         Respectfully Submitted,
         Wilmington, Delaware

**McCARTER & ENGLISH LLP**

/s/ *Kate R. Buck*
Kate R. Buck (DE# 5140)
Renaissance Centre
405 North King Street, Suite 800
Wilmington, Delaware 19801
(T) 302.984.6300
(F) 302.984.6399
kbuck@mccarter.com

*Attorneys for CFAR Defendants*